Thomas A. Leonard et al., Petitioners *v.* Richard L. Thornburgh, Governor et al., Respondents.

Heard July 7, 1983, by President Judge CRUMLISH, JR.

*Thomas A. Leonard,* for petitioners.

*Jill A. Douthett,* Divisional Deputy City Solicitor, with her *John M. Myers,* Divisional Deputy City Solicitor, *Pamela L. Perry,* Chief Assistant City Solicitor, and *Janet S. Holcombe,* Assistant City Solicitor.

*William S. Rawls,* Executive Deputy Attorney General, with him *Maura A. Johnston, Robert Coyne* and *Allen C. Warshaw,* Deputy Attorneys General, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

MEMORANDUM OPINION AND ORDER BY PRESIDENT JUDGE CRUMLISH, JR., July 19, 1983:

Thomas A. Leonard and Kathleen, his wife, and Graveley Roofing Corporation have petitioned this Court in its original equity jurisdiction to have the Non-Resident Cap of the Tax Reform Code of 1971[1]

declared unconstitutional and to enjoin the City of Philadelphia from enforcing recent amendments to both its Wage and Net Profits Tax and its Mercantile License Tax.[2] Before us is the petitioners' application for a preliminary injunction.

The application is denied and the Graveley's part of this action is transferred to the Philadelphia County Common Pleas Court.

## POWERS, DUTIES AND RESPONSIBILITIES OF A CHANCELLOR

Traditionally, equitable principles have been applied judicially where the customary and technical forms of redress have proven inadequate and unresponsive to the resolution of social conflicts. The court of chancery, which traces its roots to English antiquity and beyond, evolved in natural consequence to the inherent limitations and inflexibility of the common law courts. The quest for natural justice nurtured a system of equitable jurisprudence which, guided by the dictates of conscience, settled controversies left unresolved by positive law.

Although a chancellor's powers are controlled by law in this Commonwealth, see *Pennsylvania Anthracite Mining Co. v. Anthracite Miners of Pennsylvania,* 318 Pa. 401, 178 A. 291 (1935), he still possesses the broad and flexible ability to grant remedial relief

---

[1] Section 359 (b) of the Act of March 4, 1971, P.L. 6, *as amended,* added by Section 2 of the Act of December 21, 1977, P.L. 330, 72 P.S. §7359 (b), establishes a "cap," or ceiling, on the tax rate that Philadelphia can impose on the salaries, wages, commissions or other compensation received *by non-residents,* but sets no similar limit on the tax rate that can be applied against the wages and other compensation earned by City residents.

[2] The Commonwealth and the City of Philadelphia have filed preliminary objections to the petition for review. These preliminary objections (including a contest to the standing of Thomas Leonard to bring this suit) are not the subject of this Opinion, but will be disposed of subsequently by this Court.

where justice and good conscience so require. This is a sacred responsibility which must be exercised with both due diligence and the full consideration of the rights of all, and with an acute awareness of the harm that may result from the improvident granting of a specific requested relief.

## HISTORY OF CASE

On June 2, 1983, Philadelphia City Council enacted two tax ordinances. Ordinance No. 1716, which had an effective date of July 1, 1983, amended the City's Wage and Net Profits Tax by increasing the tax rate from 4 5/16% for *all* taxpayers to 4 96/100% for *Philadelphia residents only.* The rate for all *non-resident taxpayers* remained at 4 5/16%. The City's Mercantile License Tax (Ordinance No. 1742, also effective on July 1, 1983) was amended by eliminating the exclusion on certain Philadelphia-based business transactions consummated outside the City boundaries. This effectively provides Philadelphia with a gross receipts tax collected in extraterritorial sales and services. We will consider these ordinances separately.

## DISCUSSION

### Ordinance No. 1742

In Count III of the Complaint, Graveley, a Philadelphia-based business, contends that the City is without authority to tax sales made and services rendered outside the City limits. Graveley argues, among other things, that ordinance No. 1742 violates both the United States Constitution and the Commonwealth's Sterling Act.[3] Graveley, however, seeks relief only

---

[3] The City has no inherent taxing power. Rather, "[t]he only power that Philadelphia has to impose any tax on its residents is the power that the State gives it. . . ." *Marson v. City of Philadelphia,* 342 Pa. 369, 373, 21 A.2d 228, 230 (1941). The Commonwealth

*against the City.* None having been sought of the Commonwealth or of its officers, this Court is without original jurisdiction to determine that issue. *See* Section 761(a)(1) of the Judicial Code.[4] Thus, we sever Graveley's challenge to Ordinance No. 1742 and transfer that part of the Complaint to the Philadelphia County Common Pleas Court for disposition,[5] Graveley to bear the costs of the transfer. *See* Pa. R.C.P. No. 213(f).

## Ordinance No. 1716

The Leonards' Complaint is something else again. They would have us enjoin Philadelphia[6] from imposing, levying, assessing and collecting the difference between the tax rate imposed on the salaries, wages, commissions and other compensation earned by the City's residents and the lower tax rate enjoyed by their neighbors and fellow citizens inside and outside the Commonwealth. Since the City's authority to impose different rates of taxation on residents and nonresidents is based on the so-called Non-Resident Cap, the Leonards have joined certain Commonwealth officials[7] and urge this Court to enjoin the Commonwealth from "enforcing and implementing . . . the Non-Resident Wage Tax Cap," pending judicial determination of that provision's constitutionality.

---

has delegated limited taxing powers to Philadelphia through the Sterling Act, Act of August 5, 1932, Ex. Sess., P.L. 45, *as amended,* 53 P.S. §15971.

[4] 42 Pa. C. S. §761(a)(1).

[5] The Philadelphia County Common Pleas Court appears to have jurisdiction by virtue of Section 931 of the Judicial Code, 42 Pa. C. S. §931.

[6] The Philadelphia Respondents include: William J. Green, Mayor; Joseph W. Brown, Director of Finance; and Eugene L. Cliett, Jr., Revenue Commissioner.

[7] The Commonwealth Respondents include Richard L. Thornburgh, Governor, and James I. Scheiner, Secretary of Revenue.

558

## The Law

Initially, it is desirable to repeat the well-settled burden of law imposed upon the Leonards. The bedrock foundation to be firmly set in place prior to any Court granting a preliminary injunction is clearly and unequivocally defined:

> [F]irst, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. . . . Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded. . . . (Citations omitted.)

*New Castle Orthopedic Associates v. Burns,* 481 Pa. 460, 464, 392 A.2d 1383, 1385 (1978).

As to whether the Leonards' right is clear and actionable, this hinges on whether the hearing judge, as chancellor in equity, concludes that, when it is ultimately determined, the Non-Resident Cap will be struck down as violative of petitioners' constitutional rights. Stated otherwise, a chancellor must make a threshold inquiry and reach a conclusion as to the probability of success on the merits.

The Leonards' complaint is that the taxing schematic on wages earned by the City's residents and non-residents is violative of Article VIII, Section 1 of the Pennsylvania Constitution, the so-called "Uniformity Clause," which provides:

All taxes shall be uniform, *upon the same class of subjects,* within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws. (Emphasis added.)

Our Supreme Court, in the *Appeal of Biddle,* 390 Pa. 460, 468, 135 A.2d 915, 919 (1957), upon examining a taxing plan for trust property where the trustees are from different counties of residence, cited the test enunciated in an earlier Supreme Court case as guidance in the perplexing classification problem:

The test of classification is whether it produces diversity in results or lack of uniformity in its operation either on the given subject of tax, or the persons affected as payers. (Quoting from Schoyer v. Comet Oil & Refining Co., 284 Pa. 189, 197, 130 A. 413, 416 (1925)).

The Non-Resident Cap distinquishes between individuals who, because of the situs of either their residence or place of employment (or perhaps both), now pay a different percentage of taxation upon the one common denominator which binds the group, namely, earned salaries, wages, commissions and other compensation.

The respondents' argument in opposition to the grant of petitioners' motion is that City, under the scheme mandated by the Legislature, is levying a reasonable tax upon two distinct classes. Petitioners, on the other hand, dispute this bifurcation and would have us hold that the wage tax is equivalent to an occupation tax and must be uniform to the class. *See Amidon v. Kane,* 444 Pa. 38, 279 A.2d 53 (1971) and *Danyluk v. Johnstown,* 406 Pa. 427, 178 A.2d 609 (1962).

Though counsel has cited no case directly on point for those propositions supporting non-uniformity in

*wage tax* disputes, and our extensive research to this moment discloses none, we are of the opinion that the non-resident-resident distinction is without a difference, an artificial one which splits in two the class of wage taxpayers in the City of Philadelphia. It is clear that the Legislature may prohibit the City from taxing both residents and non-residents. For constitutional consideration, however, it does not follow that the class of eligible taxable persons may be taxed at different percentage rates. The resolution of the class question, of course, requires a twofold determination: Is there a statutory distinction in the classes and, if so, is that a reasonable distinction? In our view, the Legislature and City Council have arbitrarily created an unjust burden and have discriminated against those members of a class who, because of an invisible boundary line, live by command or choice within the City's limits.

Our Supreme Court, in *Danyluk, supra* held, in considering an occupational privilege tax,[8] that such a distinction among individuals based on their residency or non-residency status is unjustified. The Court stated that "[r]esidence cannot be made the basis of discrimination in taxation of persons engaged in the same occupation or profession." *Danyluk* at 430, 178 A.2d at 610. If the Non-Resident Cap would stand, Philadelphians and non-Philadelphians, working side by side at the same occupation or profession in Philadelphia, would pay the wage tax at different rates. It is beyond our finite acuity to perceive a scenario more alien to the concept of uniformity.

Having concluded that the tax offends one portion of the *Biddle* test as it relates to paying citizens, we now turn to the diversity in result test. The late

---

[8] An occupational privilege tax is a flat dollar-amount-levy assessed against all persons engaged in any occupation within a certain municipality.

Judge HARRY KRAMER, in *City of Philadelphia v. Kenny*, 28 Pa. Commonwealth Ct. 531, 551 n. 10, 369 A.2d 1343, 1354 n. 10 (1977), *cert. denied,* 434 U.S. 923 (1977), *reh'g denied,* 434 U.S. 1025 (1978), definitively articulated this Court's position when New Jersey residents sought to avoid the payment of City wage tax:

Having just witnessed the Bicentennial year, when the people of New Jersey and Pennsylvania as well as the people of their sister states have so genuinely shown concern for one another, it is ironic that these cases continue on in what this writer believes to be a frivolous and vexatious manner. There is no question that there have been serious constitutional questions, but they have been resolved many years ago, and yet, many New Jersey residents who desire, understandably, to avoid any more taxation are still attempting to take all the benefits they can wring out of the City of Philadelphia without paying for same. This writer need not go into litany of beneficial services provided by the City. It is sufficient to point to the provision of health care, fire and police protection, to the use of the streets, sewers, water, and other utilities; to the use of Philadelphia's hospitals, universities, colleges, museums, aviaries, libraries, zoo, and conservatory, none of which facilities pay taxes. Enough is said concerning the benefits that the New Jersey residents are unfairly reaping at the expense of the Philadelphia taxpayers. In 1977 most reasoning adults who have any familiarity with the front pages of their respective newspapers know that large metropolitan areas, especially cities like Philadelphia and New York, are close to bankruptcy because of the high cost of everything. Infla-

562

tion hits government as well as it hits the private citizen. The people of this country must come to realize that in order to save the cities, which perform functions which make this country work, the cities cannot continue to provide services to nonresidents without some kind of compensation. To hold otherwise would be to fail to realize that municipal overburden is one of the most important defects in the operation of local governments in this country.

We reject as unquantifiable and unrealistic any argument that residents should pay the wage tax at a higher rate because they enjoy the services to a greater extent than non-residents.

It is obvious to this Chancellor that the existence of these two artificial classes creates a diversity of result. Residents of Philadelphia are obliged to pay higher taxes than non-residents for services made available equally and indiscriminately to all when they enter the City to work. If a municipality or the Commonwealth, or even the federal government for that matter, tried to compute the tax liability of each member of a group or of a subset within the group by basing it on *actual benefits received,* the effort would be futile and the result chaotic. Can it reasonably be argued that federal or state income tax is directly related to the immediate and actual benefits each individual receives? In fact, on a one-to-one basis, there is an enormous disparity of benefits needed by and provided to the great spectrum of *City* residents.

It is axiomatic that the quantum of services consumed by an individual is not directly proportional to the amount of tax dollars tendered by him. To justify an artificial class distinction is, to the Chancellor, an obvious attempt to discriminate against those who live within the City limits or, in the alternative, to have non-residents enjoy all the core City benefits

without sharing the concomitant responsibility of contributing to them.

Our conclusion that the Leonards are likely to succeed on the merits, as we have said, is the Chancellor's threshold determination. "It is improper for the . . . judge to treat the hearing on an application for a preliminary injunction as a final hearing on the merits and as a basis for final decree. . . ." *Naus & Newlyn, Inc. v. Mason,* 295 Pa. Superior Ct. 208, 212, 441 A.2d 422, 424 (1982) (*per curiam*). Thus, this Chancellor is of the opinion that the Non-Resident Cap is unconstitutional. Notwithstanding this conclusion, however, that it appears now that the Leonards will prevail on the merits, this proceeding is not the proper procedural forum where it will be decided finally.

The requisites of a preliminary injunction are cumulative. Thus, if one element is lacking, relief may not be granted. *See Bowman v. Department of Transportation* (No. 1627 C.D. 1983, filed July 11, 1983). The Leonards have failed to establish to our satisfaction that greater injury would result by its denial than by the grant of the restrictive order itself. We need only mention in passing that remedial legislation or administrative regulation is available to provide monetary relief. *See New Castle Orthopedic Associates v. Burns,* 481 Pa. 460, 392 A.2d 1383 (1978) (it is necessary to prevent immediate and irreparable harm which could not be compensated by damages) ; *McMullan v. Wohlgemuth,* 444 Pa. 563, 281 A.2d 836 (1971) (a court must consider whether the proposed injunction would adversely affect the public interest).

On the other hand, should the requested relief be granted immediately, the impact upon the City's fiscal equilibrium would be disastrous. The Philadelphia Home Rule Charter provides, in part, that;

The annual operating budget ordinance shall not become effective . . . *until the Council has*

*balanced the budget.* 351 Pa. Code §2.2-302. (Emphasis added.)

Moreover, the City Controller may not approve any order for any expenditure until the budget is balanced. *Id.* If this Court enjoins the collection of the current wage tax, a $60 million deficit would result, causing an unbalanced budget, and propel the City into a state of fiscal paralysis. An obvious crippling consequence of the City's inability to expend funds is the disruption, if not the termination, of vital municipal services, none the least of which is the police and fire protection, a frightening threat to the residents and nonresidents. This Court will not so endanger the public welfare and is not moved at this preliminary stage to so hold.

## Conclusion

The Leonards' application for preliminary injunction must, with regret, be denied. The Philadelphia City Council, following the nomination election process in its haste to meet belatedly the City Charter deadline, failed to recognize the inequity of the Cap and enacted this legislation. Its members and the members of the General Assembly, whose duty it is to fund administration expenditures, would do well, when considering future taxing policies, to cast aside personal, political and parochial differences with the executive branch and each other, and judiciously contemplate and enact fair and equitable revenue legislation. If the Leonards prevail ultimately, as it appears they will, an appropriate remedy will be fashioned at that time.

## Order

The application, filed by Thomas A. Leonard and Kathleen Leonard, to preliminarily enjoin the City of Philadelphia from imposing, levying, assessing and collecting the increased tax provided for under Ordi-

nance No. 1716, which amended the City's Wage and Net Tax, is hereby denied.

The application, filed by Thomas A. Leonard and Kathleen Leonard, to preliminarily enjoin the Commonwealth from enforcing and implementing the provisions of the "Non-Resident Wage Tax Cap", Section 359(b) of the Act of March 4, 1971, P.L. 6, *as amended,* added by Section 2 of the Act of December 21, 1977, P.L. 330, 72 P.S. §7359(b), is hereby denied.

Count Three of the above petition for review is hereby transferred to the Philadelphia County Common Pleas Court for disposition. Graveley shall bear the costs of this transfer. *See* Pa. R.C.P. No. 213(f).

Stenographic costs shall be borne equally among the parties.