American Federation of State, County and Municipal Employees, AFL-CIO, by its Trustee Ad Litem, Edward J. Keller, Petitioner *v.* Commonwealth of Pennsylvania et al., Respondents.

Dennis J. Solecki and Lea F. Barbush et al., Petitioners *v.* Commonwealth of Pennsylvania et al., Respondents.

Joint Bargaining Committee of the Pennsylvania Social Services Union et al., Petitioners *v.* Commonwealth of Pennsylvania et al., Respondents.

Hearing held August 17, 1983, before President Judge CRUMLISH, JR.

38

*Richard Kirschner,* with him *Lee W. Jackson* and *Stuart W. Davidson, Kirschner, Walters, Willig, Weinberg & Dempsey,* for petitioners, American Federation of State, County and Municipal Employees et al. and Dennis J. Solecki and Lea F. Barbush et al.

*Bruce M. Ludwig, Stephen A. Sheller & Associates,* for petitioners, Joint Bargaining Committee of the Pennsylvania Social Services Union et al.

*James J. Kutz,* Deputy Attorney General, with him *Allen C. Warshaw,* Deputy Attorney General, Chief of Special Litigation, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

MEMORANDUM OPINION BY PRESIDENT JUDGE CRUMLISH, JR., September 2, 1983:

The Petitioners in three consolidated cases[1] seek to enjoin permanently the enforcement of Act No. 31 of 1983 (Act 31) which requires most Commonwealth employees, participants in the State Employees' Retirement System, to contribute an additional $1\frac{1}{4}\%$ of their salary to the State Employees' Retirement Fund (Fund). Before us are the Petitioners' applications for a preliminary injunction. We grant the preliminary injunction and order the Commonwealth to refund im-

---

[1] By our order today, the following actions are consolidated for argument and disposition: *American Federation of State, County and Municipal Employees v. Commonwealth of Pennsylvania,* No. 2064 C.D. 1983; *Solecki v. Commonwealth of Pennsylvania,* No. 2160 C.D. 1983; and *Joint Bargaining Committee of the Pennsylvania Social Services Union v. Commonwealth of Pennsylvania,* No. 2133 C.D. 1983.

mediately all employee contributions in excess of the five (5%) percent basic contribution rate heretofore collected.

HISTORY OF CASE

The State Employees' Retirement Code[2] (Retirement Code), which requires employee participation in the retirement system, imposes on an employee certain obligations to the system, including the responsibility to make "regular member contributions" to the Fund[3] in the amount of five (5%) percent of his compensation. This contribution, which is deducted from the employee's salary, was established by the Legislature with the specification that:

> [I]n no case shall any member's rate [of contribution] be greater than his contribution rate on the effective date of this part so long as he does not elect additional coverage or membership in another class of service.[4] (Emphasis added.)

During the 1983 General Assembly session, Senate Bill No. 385 was introduced to amend *Title 24* of the Pennsylvania Consolidated Statutes (Education).[5] This Bill was amended several times[6] before its enactment into law on July 22, 1983, as Act 31. In its final form, Act 31, in addition to amending both *Title 24* and the Public School Code of 1949, amended the Retirement Code (*Title 71* of the Pennsylvania Consolidated

---

[2] 71 Pa. C. S. §5101.

[3] Section 5501 of the Retirement Code, 71 Pa. C. S. §5501.

[4] Section 5102 of the Retirement Code, 71 Pa. C. S. §5102.

[5] Senate Bill No. 385 was initially introduced to establish "pick up" contributions by employers to the Public School Employees' Retirement System on behalf of school employees and to allow such contributions to be treated as the employers' contributions for federal tax purposes.

[6] Senate Bill No. 385 was amended *three times* prior to its enactment into law.

Statutes) by requiring Commonwealth employees to make an *additional* contribution into the Fund:

> [A]t a rate of 1¼ % of compensation until such time as the actuary certifies that all accrued liability contributions have been completed in accordance with [the Retirement Code].

The petitioners contend that the promulgation and enforcement of Act 31 is procedurally and substantively unconstitutional; that the unilateral increase in the employee contribution rates without a commensurate increase in benefits constitutes an improper impairment of contract rights; and that Act 31 violates state law which requires the *Commonwealth, as the employer*, rather than the employees, to insure the actuarial stability of the Fund.

### THE LAW

Initially, we note the well-settled burden imposed on a petitioner when seeking a preliminary injunction:

> [F]irst, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct.... Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded.... (Citations omitted.)

*New Castle Orthopedic Associates v. Burns*, 481 Pa. 460, 464, 392 A.2d 1383, 1385 (1978).

As to the first criterion, the Commonwealth contends that any alleged harm to the Petitioners is reparable. The Commonwealth reasons that, if Act 31 is ultimately struck down, the refund of all additional contributions plus a four (4%) percent interest payment[7] is sufficient to compensate for any damage. We hold the proposed legal remedy, however, to be patently inadequate.

First, in this inflationary economy, interest rates well in excess of ten (10%) percent are common. This fiscal circumstance by itself clearly demonstrates that the mere four (4%) percent pitance falls well below the standard of "adequate legal remedy" that would prevent the issuance of a preliminary injunction. Furthermore, the loss of the *immediate use* of one's earnings is an egregious injury that could never be adequately remedied, at some indefinite future date, by the simple award of damages. The Commonwealth minimizes the gravity of a 1¼% reduction in net compensation. However, the impact of an ostensibly small sum varies substantially, depending upon the particular fiscal and familial obligations of the individual. The Commonwealth is, by questionable process (as discussed below), depriving its employees of the means of satisfying their basic needs and the needs of their families. Under these circumstances, this chancellor concludes that the immediate harm occasioned on the Petitioners is irreparable. Justice and conscience so dictate.

As to the second criterion, the Commonwealth contends that the Fund's actuarial soundness would be impaired if this Court would enjoin the collection of the additional 1¼% contribution, and, thus, injunctive

---

[7] The Commonwealth contends that the four (4%) percent interest rate is set by Section 5102 of the Retirement Code, 71 P.S. §5102.

relief is inappropriate. In support of its position, the Commonwealth cites our recent decision in *Leonard v. Thornburgh*, 75 Pa. Commonwealth Ct. 553, 463 A.2d 77 (1983) in which this Court, although concluding that the petitioners were likely to succeed on the merits of their claim,[8] denied a preliminary injunction application since its immediate impact on the public welfare would have been disastrous. *See McMullan v. Wohlgemuth*, 444 Pa. 563, 281 A.2d 836 (1971) (a court must consider whether the proposed injunction would adversely affect the public interest).

Here, however, there is no impending crisis. The Commonwealth has produced no evidence to support its contention that injunctive relief would impair the Fund's actuarial soundness. Rather, the Commonwealth employees are severely and irreparably impacted by the continued extractions from their paychecks of the additional contributions, and this impact would be compounded during the course of litigation. Thus, this chancellor finds that much greater harm would result if the preliminary injunction were denied. Moreover, injunctive relief will restore the parties to their status as it existed prior to the enactment and enforcement of Act 31.

As to whether a petitioner's right is clear and actionable, the chancellor must determine whether, when the issue is finally resolved, the petitioner will prevail on the merits. *See Leonard v. Thornburgh.* The Petitioners mount several constitutional challenges

---

[8] In *Leonard*, the petitioners challenged the constitutionality of the Non-Resident Cap of the Tax Reform Code of 1971, Section 359(b) of the Act of March 4, 1971, P.L. 6, *as amended*, added by Section 2 of the Act of December 21, 1977, P.L. 330, 72 P.S. §7359(b). The Non-Resident Cap establishes a ceiling on the tax rate that the City of Philadelphia can impose on the salaries, wages and commissions received by non-residents.

to Act 31. However, since we conclude that Act 31 improperly impairs the Petitioners' constitutionally-guaranteed right to contract, we need not address their other contentions at this time.

In Pennsylvania, public retirement benefits are considered deferred compensation, *Wright v. Retirement Board of Allegheny County*, 390 Pa. 75, 134 A.2d 231 (1957); thus, an employee obtains certain contractual rights which are constitutionally-protected against legislative impairment.[9] Our Supreme Court noted, in *Geary v. Retirement Board of Allegheny County*, 426 Pa. 254, 257, 231 A.2d 743, 745 (1967), that:

> [P]ublic employees who have become eligible for retirement allowances and those who are in the process of becoming eligible possess certain vested contractual rights with which the Legislature may not constitutionally interfere.

Recently, our Supreme Court reaffirmed the position that subsequent legislation cannot adversely affect those employees whose rights to retirement benefits had completely vested. *Catania v. Commonwealth (Catania I)*, 498 Pa. 684, 450 A.2d 1342 (1982) *(per curiam)*. On remand,[10] this Court, in *Catania v. Commonwealth (Catania II)*, 71 Pa. Commonwealth Ct. 393, 409, 455 A.2d 1250, 1258 (1983), concluded that, with respect to employees who entered the retirement system prior to the legislative change but whose rights to benefits had not yet vested, a change which affects a "net detriment" to the employee constitutes:

---

[9] The protections against the improper impairment of the right to contract are found in Art. I, §10 of the United States Constitution and Art. I, §17 of the Pennsylvania Constitution.

[10] Our Supreme Court was equally divided with respect to the limitations to be placed on the Legislature when affecting retirement benefits of employees whose rights to those benefits had not yet vested.

*[A] constitutionally impermissible impairment of the contract* into which an employee has entered by becoming a member of the fund upon employment. (Emphasis added.)

Applying these principles to the case at hand:

1) As to those employees whose rights to retirement benefits have already vested, Act 31 is clearly an unconstitutional impairment of contract since it affects an adverse change. The increased contribution rate, without a commensurate increase in benefits, effectively diminishes the benefits received.

2) As to those employees whose rights have not yet vested, Act 31 is unconstitutional because it affects a "net detriment," that is, it does not contain any new benefit to offset the fiscal disadvantage of the increased contributions.[11]

Based on the foregoing, it is the opinion of this chancellor that the Petitioners will ultimately succeed on the merits of their case.

## CONCLUSION

The Petitioners' application for a preliminary injunction is hereby granted. The Commonwealth is hereby enjoined from collecting pension contributions from those employees, who were members of the State Employees' Retirement System *prior* to the enactment of Act 31, in excess of the five (5%) percent basic contribution rate. Further, since the subject employees are, by the action of the Commonwealth, suffering irreparable harm by being deprived of the use of their money and since the process by which the Commonwealth has been collecting the additional contributions poses serious constitutional questions, the Com-

---

[11] Notwithstanding the Petitioners' other constitutional challenges, we note that Act 31 does not improperly impair the contract rights of those individuals who were hired by the Commonwealth after Senate Bill No. 385 was enacted into law.

monwealth is directed to return, immediately, all monies collected from those employees in excess of the five (5%) percent basic contribution rate.

Pursuant to Pa. R.C.P. No. 1531(b), the Petitioners, collectively, are required to file with the Chief Clerk of this Court a bond in the amount of one hundred thousand dollars ($100,000.00).

ORDER

Upon consideration of the Petitioners' Motion for Consolidation and Application for Preliminary Injunction, it is hereby ordered as follows:

1) The three above-captioned matters are consolidated for argument and disposition.

2) Respondents, jointly and severally, together with their agents and representatives, are hereby preliminarily enjoined from collecting pension contributions from employees, who were members of the State Employees' Retirement System *prior* to the enactment of Act No. 31 of 1983, in excess of the five (5%) percent basic contribution rate.

3) Respondents, jointly and severally, together with their agents and representatives, are hereby directed to return, immediately, all monies collected from employees, who were members of the State Employees' Retirement System *prior* to the enactment of Act No. 31 of 1983, in excess of the five (5%) percent basic contribution rate.

4) Because we hold herein that the harm to the Petitioners is immediate and irreparable, any appeal taken by the Respondents from this Order shall not act as an automatic supersedeas. Pa. R.A.P. 1736(b).

5) The Petitioners, collectively, are required, subject to the terms and conditions set forth in Pa. R.C.P. No. 1531(b), to file with the Chief Clerk of the Com-

monwealth Court of Pennsylvania a bond in the amount of one hundred thousand dollars ($100,000-.00).

6) Stenographic costs shall be borne equally among the parties.