## Tel-A-View Cable Corp. v. Oxford Valley Cablevision, Inc., and Twp. of Bensalem

*Robert G. Bauer,* for plaintiff.

*M. Melvin Shralow,* for defendant Oxford Valley Cablevision, Inc.

*Alton Grule,* for defendant Township of Bensalem.

LUDWIG, *J.,* May 7, 1985—Upon hearing, we dismissed the petition of plaintiff Tel-A-View Cable Corporation for a preliminary injunction. Plaintiff's appeal to the Superior Court followed.

The injunctive relief sought was an order restraining defendant Oxford Valley Cablevision, Inc., from competing with plaintiff for cable television subscribers who live in a residential development located in Bensalem Township. The petition also sought to prevent the township from performing a cable television franchise agreement it had entered

into with Oxford Valley and from issuing any installation permits.

At the end of Tel-A-View's case-in-chief, we granted defendants' motions to dismiss because the evidence failed to demonstrate a clear entitlement to relief. Willman v. Children's Hospital of Pittsburgh, 505 Pa. 263, 479 A.2d 452 (1984). Plaintiff's action proceeded on the theory of an exclusive license to provide cable television service. The evidence, however, as discussed below, did not support that theory.

Under date of June 26, 1974, plaintiff's predecessor[1] entered into two written agreements with a residential developer doing business as "Berkeley Trace." These consisted of an "Indenture of Lease," granting plaintiff the right to build "a television antenna tower and shack" in an area 50 feet by 50 feet, and an "Agreement" for an easement to install wiring cable and equipment to service "the townhouses of Berkeley Trace" for a period of 50 years. An easement, granting a "right of way" for this purpose, was attached to the agreement. The term of the lease was 25 years with two renewals at lessee's options. The lease provides: "Section 20.03. Lessor shall permit no other cable T.V. service to operate from any portion of the premises to be retained by lessor, of which the Premises are a part, during the term of the Lease, and shall prohibit exterior antenna." The premises referred to in the lease are an apartment complex. The agreement and the easement speak of townhouses to be constructed and sold by the developer.

---

1. Tel-A-View Electronics Associates, a limited partnership. The developer, Berkeley Trace, is part of the Gigliotti Corporation.

According to plaintiff's president, who is also its sole shareholder, it was his understanding that the developer granted Tel-A-View an exclusive license to provide cable television service to the entire Berkeley Trace development, including both the apartments and the townhouses. In 1974, Berkeley Trace apparently consisted of three areas or sections, all of which were in the initial plans of construction. One was a 282 apartment unit development, which became known as Berkeley Trace apartments. Adjacent to the apartments was a section named "Clusters of Berkeley," comprised of 295 townhouses. A third area, separated from the other two by Bensalem Boulevard, was named "Berkeley Trace Clusters," a townhouse development of 86 or 87 units.[2]

In its action in equity, the Clusters of Berkeley townhouse development is the only area for which plaintiff claims relief. Oxford Valley Cablevision has not approached any apartment house occupant in Berkeley Trace, and plaintiff never serviced Berkeley Trace Clusters. Instead, Oxford Valley has provided service to those townhouses for several years.[3]

---

2. A confusion arises from the similarity in the names of these adjoining sections and, more importantly, from the use of the word "townhouses." Apart from the testimony of plaintiff's president as to his belief and understanding, no intelligible evidence was offered to show the particular premises covered by the easement. A metes and bounds description recorded with the easement could have pertained to either or both of the townhouse sections. It does not refer to Bensalem Boulevard or to any road separating Berkeley Trace Clusters from the other sections. No description of the apartment section was placed in evidence.

3. In 1979, after plaintiff refused its request to sign a release of easement, Oxford Valley installed its underground equipment at Berkeley Trace Clusters and began soliciting customers. Plaintiff took no legal action because, according to

At the hearing, plaintiff's contention that it enjoyed an exclusive right to provide service to the Clusters of Berkeley townhouses rested on its proof of a parol license.[4] Its president testified that he set forth his understanding of the arrangement in a letter to the developer dated February 20, 1974. Thereafter, his company and the developer entered into the lease and the agreement. A steel tower was built and equipped at a cost of $35,000, and main trunk lines were installed along the streets of the existing and projected apartment units and townhouses. Underground feeders were run to the front of each property, in the same trench as the utility lines, and each unit was "pre-wired" with television service — before the interior walls were constructed. Completion of the entire project took plaintiff six years and cost about $250,000, plus a yearly maintenance expense of $5,000.

Plaintiff charges its subscribers by the month and the service is terminable with 15 days' notice. Since inception of the system, the percentage of subscribers has run between 38 and 47 percent in both the apartments and the townhouses.

In the opinion of plaintiff's president, any loss of income attributable to competition from Oxford Valley Cablevision would be calculable. The financing of plaintiff's operation was a bank loan based on ser-

---

its president's testimony, the development was relatively small, 86-87 units. It had never provided service there because the developer breached its agreement to install a pipe under Bensalem Boulevard.

4. The theory of an exclusive right, as asserted in the complaint, was that it was granted by the developer "pursuant to the Agreement of June 26, 1974" as implemented by the recorded easement of the same date. Complaint, paragraph 5-7. Neither document, however, contains any reference to an exclusive right.

vicing the whole development. Initially for 10 years, it has been reset, and plaintiff's president is personally liable on the obligation. Without the townhouse revenues, plaintiff would be unable to stay in business at Berkeley Trace.

In order to erect the tower, plaintiff was required to obtain approval from the township's zoning hearing board. In 1981, the developer dedicated to the township all of the streets and certain common ground in the development, including that subject to the utility companies and plaintiff's president has informed both the township manager and the local manager of Oxford Valley that his company was servicing the development under an exclusive license.

In 1965, Bensalem Township granted Bucks County Cable T.V. a franchise to install equipment wire to the township for cable television, and that franchise was assigned, in 1977, to defendant Oxford Valley Cablevision.

To date, at the Clusters of Berkeley development, Oxford Valley Cablevision has expended about $28,500 in excavating trenchs to install trunk and feeder lines. The trunk wires were run through the common ground and the feeders along the rear boundaries of the townhouses, according the location of plaintiff's easement.[5] Oxford Valley Cablevision anticipates providing service to 75-80 percent of the townhouses, a monthly revenue of about $3,000-$3,300.

The law applicable to preliminary injunctions has recently been summarized as follows:

---

5. A petition and rule to intervene was filed on behalf of a townhouse owner by plaintiff's counsel. Nothing further was done to effectuate the intervention.

"The prerequisites to obtaining a preliminary injunction are familiar: (1) immediate and irreparable harm not compensable by damages; (2) greater injury resulting from a refusal of the injunction than from a grant of it; (3) effectiveness of an injunction to restore the status quo; and (4) an actionable wrong abatable by the injunction. Leonard v. Thornburgh, 75 Pa. Commw. 553, 463 A.2d 77 (1983). Moreover, the petitioner's right must be clear and the wrong manifest. A.F.S.C.M.E. v. Commonwealth, 77 Pa. Commw. 37, 465 A.2d 62 (1983). Adler v. Township of Bristol," 83 Pa. Commw. 72, 74, 475 A.2d 1361, 1362-1363 (1984). Since a preliminary injunction involves extraordinary relief, the proponent has a heavy burden of persuasion. Three County Services, Inc. v. The Philadelphia Inquirer, 337 Pa. Super. 241, 486 A.2d 997 (1985).

Defendants argue that plaintiff's evidence does not show the necessary element of irreparability because any loss that might be sustained would be compensable in damages. They stress the point that plaintiff's president himself testified that he would be able to calculate any loss of revenues and other capital losses that plaintiff might experience. However, the evidence also strongly suggested that competition from Oxford Valley could be enough to put plaintiff out of business. Damage to an intangible value such as good will can never be accurately ascertained and may be very difficult to prove. See, e.g., Exton Drive-In, Inc. v. Home Indemnity Co., 436 Pa. 480, 261 A.2d 319 (1969). Moreover, the possible consequences of interference with customer relationships cannot be fully compensated by money damages. New Castle Orthopedic Associates v. Burns, 481 Pa. 460, 392 A.2d 1383 (1978); John G. Bryant Co., Inc. v. Sling Testing and Repair, Inc.,

471 Pa. 1, 369 A.2d 1164 (1977). In these regards, plaintiff's proof was sufficient to establish the need for an injunction to prevent immediate and irreparable harm.

What its evidence failed to demonstrate was that it had a clear legal right and that the alleged wrong was manifest. The requirements of a preliminary injunction are cumulative. If one of the requirements is lacking, relief cannot be granted. Leonard v. Thornburgh, 75 Pa. Commw. 553, 463 A.2d 77 (1983).

As plaintiff contends, Pennsylvania has long recognized the doctrine of an irrevocable license with respect to the use of land. Dailey's Chevrolet, Inc. v. Worster Realties, Inc., 312 Pa. Super. 275, 458 A.2d 956 (1983), citing Pierce v. Cleland, 133 Pa. 189, 19 Atl. 353 (1890).[6] "A license is 'an authority or permission to do a particular act or series of acts upon the land of another without possessing any interest or estate in such land.' Baldwin v. Taylor, 166 Pa. 507, 31 Atl. 250 (1895).' " Sparrow v. Airport Parking of America, 221 Pa. Super. 32, 39, 289 A.2d 87, 91, fn. 1 (1972). It is to be distinguished from an easement, which involves a grant, or its equivalent, of an interest in the land. Pennsylvania Game Commission v. Bowman, 81 Pa. Commw. 381, 474 A.2d 383 (1984). An agreement for a license need not be in writing and may be shown by parol evidence.

---

6. At common law and in most other jurisdictions, a license to use real estate cannot be irrevocable. See Messinger v. Township of Washington, 185 Pa. Super. 554, 137 A.2d 890 (1958); Cherry v. Harrison, 55 D.&C.2d 230 (1971). Also see Restatement of Property, section 519, which distinguishes between a license and a license coupled with an interest. Hennebont Company v. Kroger Company, 221 Pa. Super. 50, 289 A.2d 229 (1972), a license, a license coupled with an interest and an easement are compared.

Leininger v. Goodman, 277 Pa. 75, 102 Atl. 772 (1923); Harkins v. Zamichieli, 266 Pa. Super. 401, 405 A.2d 495 (1979); Messinger v. Township of Washington, supra. The law of equitable estoppel is the premise for the doctrine, and if the license is irrevocable, successors in title who had notice take subject to it. Dailey's Chevrolet, Inc. v. Worster Realties, Inc., supra.

"A license to use the promisor's land will become irrevocable for the duration of the license term when the promisee in justifiable reliance treats his land in a way he would not otherwise treat it, that is, by making expenditures of money for such changes as would prevent his being restored to his original position. Bieber v. Zellner, 421 Pa. 444, 447, 220 A.2d 17, 19 (1966)." See Harkins v. Zamichieli, supra.

The burden of proving an irrevocable license by parol has been equated with "that required to take a parol sale or gift followed by possession and improvement out of the operation of the statute of frauds." Reagan v. Curran, 226 Pa. 265, 269, 75 Atl. 362, 363 (1910). A license based on a valuable consideration is a contract, and the rights and obligations of the parties depend upon the terms of the license agreement. Where the agreement is not in writing, its terms may be implied from all the circumstances. Sparrow v. Airport Parking Company of America, supra.

In the present case, plaintiff's evidence established that it entered into an exclusive license agreement to provide cable television to the Berkeley Trace apartment units. The proof consisted of the express provision in the lease agreement between plaintiff and the developer. Plaintiff argues that under the circumstances the same exclusive li-

cense arrangements also applied to the townhouse sections. We disagree.

For the purpose of plaintiff's providing cable television service, no writing ties together the apartments and the townhouses. Its proof established a nonexclusive license as to the townhouses. The letter sent by plaintiff's president as owner of plaintiff's predecessor, dated February 20, 1974, refers solely to the apartments. It contains a restriction against exterior antennas, which is also in the subsequent lease. Plaintiff's claim that this provision shows an intent to have included the townhouses in the lease is belied by the earlier letter. Nothing in the lease appears to speak of the townhouses; instead, there are repeated references to the apartments.

The clarity and comprehensiveness of the terms of the lease relative to an exclusive license to service the apartments must be weighed against the absence of any such provision as to the townhouses. Several rules governing construction of contracts are pertinent. It is fundamental that the intention of the parties is controlling, and, where possible, their intention must be ascertained from the entire instrument. American Leasing v. Morrison Company, 308 Pa. Super. 318, 454 A.2d 555 (1982). Documents that appear to be in pari materia should be construed together, but their relationship may not be used to supply a material term of the contract. Haines v. Minnock Construction Co., 289 Pa. Super. 209, 433 A.2d 30 (1981). When an express contract is proved, the law will not imply a covenant or term as to any matter specifically covered by the contract. Reading Terminal Merchants Association v. Samuel Rappaport Associates, 310 Pa. Super. 165, 456 A.2d 552 (1983).

If plaintiff's predecessor and the developer had intended to agree upon an exclusive license for the townhouses, they could have merely repeated the lease's exclusive license provision or incorporated it by reference. A license to use real property or an easement such as a right of way are not by their nature an exclusive privilege or right as is exclusive possession under a leasehold. See Puleo v. Bearoff, 376 Pa. 489, 103 A.2d 759 (1954); Sparrow v. Airport Parking Company of America, supra. The parties' agreement for an easement specifically refers to "the lease with Berkeley Trace, which is entered into simultaneously herewith." That single reference to the lease is part of a hold harmless and indemnification provision in the easement agreement. If anything, it is a factor indicating that the conscious purpose of the parties was not to extend the exclusive license to the townhouses. There is a ready explanation. As the townhouse documents disclose, the developer, in 1974, had sold off some of the townhouses and proposed to build and sell more. The developer could not legally enter into an exclusive license agreement as to those already sold, and it would not obtain any practical advantage from attempting to bind properties to be purchased in the future. As to the apartments, however, where it retained ownership of the premises, those considerations were not in issue.

It is no argument to say that plaintiff's substantial investment in the cable television system must have been predicated on an exclusive license to service the townhouses. In light of the importance of these arrangements, as shown by the amount of the investment, the opposite inference is more compelling. Plaintiff's president did not identify the representatives of the developer with whom he dealt. No witness was called to corroborate his testimony as to

his belief and understanding that his company was the exclusive licensee for the townhouses. His statements to others advising them of that fact were highly self-serving and had little probative value.

Plaintiff's evidence of a clear legal right was not sufficient to justify equitable protection.

For this reason, we dismissed plaintiff's petition for a preliminary injunction and did not rule upon defendant's other arguments.[7]

---

7. Defendants' also contended that plaintiff was guilty of laches; that an exclusive cable television license violated the provisions of The Cable Communications Policy Act of 1984, P.L. 98-549, that the rights of Oxford Valley Cable Television, Inc., as township franchisee were superior to those of plaintiff; and that eminent domain was the exclusive remedy at law.