615 A.2d 836

**GWYNEDD PROPERTIES, INC., Appellant,**

v.

**LOWER GWYNEDD TOWNSHIP, Appellee.**

**GWYNEDD PROPERTIES, INC., Appellant,**

v.

**LOWER GWYNEDD TOWNSHIP, Appellee.**

Commonwealth Court of Pennsylvania.

Argued March 6, 1992.

Decided Aug. 19, 1992.

J. Peirce Anderson, for appellant.

James J. Garrity, for appellee.

Before CRAIG, President Judge, DOYLE, Judge (P.), and LORD, Senior Judge.

DOYLE, Judge.

Gwynedd Properties, Inc., (Landowner) appeals two orders of the Court of Common Pleas of Montgomery County; the first order granted Lower Gwynedd Township (Township) a preliminary injunction and the second order denied a motion to dissolve that preliminary injunction.

The pertinent facts are as follows. The Landowner owns a seventy-seven acre tract of dense forest and woodland, known as Penllyn Woods, and in 1987 it submitted a proposed subdivision plan which was denied in August 1987 by the Township Board of Supervisors.[1] Thereafter, the Township exercised its eminent domain authority under an ordinance enacted pursuant to The Second Class Township Code (Code)[2] and condemned Penllyn Woods for park purposes. The Landowner challenged this condemnation in the Court of Common Pleas of Montgomery County which upheld the Township's taking. The Landowner appealed that decision to this Court which affirmed,[3] and then to the Pennsylvania Supreme Court which

1. This denial is not the subject of this appeal. The Landowner is presently litigating that decision in the Court of Common Pleas of Montgomery County.

2. Act of May 1, 1933. P.L. 103, *as amended,* 53 P.S. §§ 65101–67201.

3. *Gwynedd Properties, Inc. v. Lower Gwynedd Township,* 129 Pa.Cmwlth 664, 565 A.2d 868 (1989).

reversed, holding that the Township's ordinance authorizing this condemnation was void because publication formalities were not followed.[4] Title was revested in the Landowner by a court order, and the Landowner then filed another subdivision plan which, again, was denied by the Township.

Thereafter, the Landowner began to destroy purposely Penllyn Woods by cutting acres of trees. In September, 1991, the Landowner cut 81 trees totaling 650 caliper inches.[5] In October, 1991, the Landowner felled 232 trees totaling 3959 caliper inches; many of the trees cut in October were very old and some of the trees had calipers as large as 44 inches. The Landowner admits in its brief (pages 10–11) that the trees were intentionally destroyed to "discourage the Township's interest in acquisition of the property by condemnation." This cutting resulted in extensive damage to Penllyn Woods and damaged the brush and soil of the area.

On October 17, 1991, the Township filed an action in equity against the Landowner in order to halt the systematic destruction of Penllyn Woods and also filed a motion for a temporary restraining order. The trial court granted the Township's motion for the restraining order and directed that the Landowner stop cutting trees and disturbing the soil. Following a hearing on October 22, 1991, the trial court concluded that there was an urgent need to preserve the status quo and stop the irreparable destruction of Penllyn Woods and, accordingly, issued a preliminary injunction continuing the same terms and conditions that were in the restraining order. The Landowner filed a motion to dissolve the preliminary injunction which was denied and this appeal from that order followed.

The Township's request for an injunction averred that the Landowner was attempting to circumvent Sections 1238.15 and 1238.16(h) of the Township's Subdivision and Land Devel-

4. *Lower Gwynedd Township v. Gwynedd Properties, Inc.*, 527 Pa. 324, 591 A.2d 285 (1991).

5. The term "caliper inches" means the diameter of the tree as measured in inches.

opment Ordinance (Ordinance) which regulate the removal and replacement of trees.

Section 1238.15 reads as follows:

Care shall be taken not to destroy trees unless removal is necessary for the construction of proposed buildings and improvements. Trees which must be shown on the preliminary plan ... shall not be removed or destroyed unless the approved plan indicates the removal of such trees.

Section 1238.16(h) states:

All subdivisions [6] and land development [7] shall be laid out in such a manner so as to preserve the healthy trees and shrubs on the site. However, each tree having a caliper of six inches or more measured six inches above the ground, if such tree is removed, shall be replaced with a shade tree or shade trees ... which have a total caliper equal to or greater than the tree removed.... This requirement is in addition to any other planting required by these Subdivision Regulations.

The Landowner contends that (1) the Township did not present the proof required to support a preliminary injunction, (2) the provisions of the subdivision ordinance on which the preliminary injunction was based are improper and unconstitutional, and (3) the ordinance requiring that a developer replace trees was enacted in violation of numerous public notice and public meeting requirements.

■■■ A preliminary injunction is a remedy designed to preserve the status quo until the litigation is decided on the merits. *Pennsylvania Interscholastic Athletic Association v. Geisinger*, 81 Pa.Commonwealth Ct. 421, 474 A.2d 62 (1984).

6. The term "subdivision" is defined in Section 1230.03(s) of the Ordinance as "the legal or equitable division of a single lot, tract or parcel of land or a part thereof into two or more lots...."

7. "Land development" is defined in Section 1230.03(i) of the Ordinance as "the improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving a group of two or more buildings or involving the division or allocation of land ... among two or more existing or prospective occupants by means of, or for the purpose of, streets, common areas, lease-holds, condominiums, building groups or other features."

The party seeking a preliminary injunction has the burden of establishing a clear right to the relief sought. *T.W. Phillips Gas and Oil Co. v. Peoples Natural Gas Co.*, 89 Pa.Commonwealth Ct. 377, 492 A.2d 776 (1985). The grounds which must be established for granting a preliminary injunction are as follows: (1) there must be a finding of immediate and irreparable harm which cannot be compensated by damages; (2) greater injury would result from refusing the injunction than by granting it; and (3) the injunction must properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. *Leonard v. Thornburgh*, 75 Pa.Commonwealth Ct. 553, 463 A.2d 77 (1983). Even more important, however, is a need to establish that the activity sought to be restrained is actionable and that the injunction is reasonably suited to abate such activity. *Id.*

The Landowner first contends that the Township failed to meet its burden of demonstrating a clear right to a preliminary injunction. It argues that, because the subdivision Ordinance relied upon by the trial court and the Township was not violated by the Landowner, there was no basis for granting the injunction.

■ The Township admitted at oral argument that the Landowner has no pending plan for the subdivision or development of Penllyn Woods.[8] The language of the Sections 1238.15 and 1238.16(h) of the Ordinance clearly contemplate the existence of a subdivision plan or land development plan; this Ordinance, therefore, is limited to protecting trees on land being subdivided or developed according to a plan. In the absence of a subdivision or land development plan, we must conclude that Sections 1238.15 and 1238.16(h) do not restrict the Landowner's property right to cut trees on its own land.

■ The Township argues that the Landowner's destruction of Penllyn Woods constitutes de facto "land development" and, therefore, the Ordinance is applicable. The trial court, however, observed:

8. Section 1234.01 of the Ordinance requires a preliminary plan and a final plan, approved by the Board of Supervisors, for all subdivisions and land developments within the Township.

*The tree cutting ... did not follow any discernable pattern and was not performed in connection with surveying or preparation of the property for development.* One of the explanations ... for this behavior was to reduce the attractiveness of this site, which would discourage the Township from pursuing further eminent domain proceedings.

(Emphasis added.) Nothing in the record suggests that the Landowner was performing "land development" within the scope of the Ordinance. Instead, the record demonstrates only that the Landowner engaged in the random cutting of trees to discourage the Township's interest in the tract for park purposes, an activity not prohibited by the Ordinance.

In *Cleaver v. Board of Adjustment,* 414 Pa. 367, 200 A.2d 408 (1964), our Supreme Court wrote:

An owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property. These include a right to use his own home [or property] in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional.

*Id.* at 371–72, 200 A.2d at 411 (quoting *Lened Homes, Inc. v. Department of Licenses and Inspections* ), 386 Pa. 50, 54, 123 A.2d 406, 402 (1956). Because the Sections of the Ordinance relied upon by the trial court and the Township are inapplicable and the Township has not asserted any other legal basis for restricting the tree cutting, the Landowner's systematic destruction of the trees, regardless of how reprehensible this may be, cannot be enjoined. The Landowner has a constitutional right to use his property as he desires, *Cleaver,* and, since its tree cutting does not violate any laws or regulations, we must hold that the trial court erred in issuing the preliminary injunction. *Leonard.*[9]

---

**9.** Because we hold that the trial court erred in granting the preliminary injunction, Landowner's appeal of the trial court's order denying the motion to dissolve the preliminary injunction is rendered moot.

Accordingly, the order of the trial court granting the preliminary injunction is reversed and the case is remanded for a permanent injunction hearing.[10]

## ORDER

NOW, August 19, 1992, the order of the Court of Common Pleas of Montgomery County in case no. 2407 C.D. 1991 is reversed and the matter is remanded for further proceedings consistent with this opinion. Case No. 2408 C.D. 1991, is dismissed as moot.

Jurisdiction is relinquished.

LORD, Senior Judge, dissenting.

I respectfully dissent. In essence, my dissent is based upon what I perceive is the majority's misinterpretation of our proper scope of review when an order granting a preliminary injunction has been appealed. The majority has decided one of the ultimate questions raised by the complaint in this case. That question, among other questions, should be decided, not now, but at the time of the hearing on the request for permanent injunction.

Preliminarily, we may note that, of the standards for granting a preliminary injunction set forth in *T.W. Phillips Gas and Oil Co.*, there can be little doubt that the requirements of irreparable damage, urgent need to preserve the status quo, minimal inconvenience to Gwynedd Properties and the inadequacy of money damages are clearly met. A few citations to the trial court's opinion will suffice to demonstrate that these prerequisites have been definitively proven.

The annihilation of hundreds of trees in Penllyn Woods and the likely continuance of this mass destruction is a classic case of immediate and irreparable harm which cannot be compensated by money damages. Many of the trees were of such age, height and physical stature that once decimated would take generations to replace.

10. Because of our disposition in this case, we need not reach Landowner's remaining issues.

*Lower Gwynedd Township v. Gwynedd Properties, Inc.,* (No. 91–19878, filed January 23, 1992), slip op. at 5. And again,

> Since Penllyn Woods may have ceased to exist if the tree cutting continued unabated, there was an urgent necessity to preserve the status quo and enjoin this irreparable injury, pending a full adjudication of the merits of this case at a final hearing.

*Id.,* slip op. at 5.

We therefore turn to our scope of review. The majority concludes that this Court must now decide the applicability of certain sections of the Township's subdivision and land development ordinance which regulate the removal and replacement of trees. Thus, the majority decides the merits of the controversy based on this one question now and reverses the preliminary injunction.

The majority correctly cites *T.W. Phillips* for the proposition that the party seeking a preliminary injunction has the burden of establishing a clear right to the relief sought, but fails to define further what is meant by "a clear right to relief." In that same case, this Court said,

> "[i]nitially, we note that the clear right to relief element does not impose upon the proponent of the preliminary injunction the burden of establishing an absolute right to relief on the underlying claim. In *Fischer v. Department of Public Welfare,* 497 Pa. 267, 271, 439 A.2d 1172, 1174 (1982), the Supreme Court articulated the "clear right" requirement as follows:

> Where the threat of immediate and irreparable harm to the petitioning party is evident, that the injunction does no more than restore the status quo and the greater injury would result by refusing the requested injunction than granting it, an injunction may *properly be granted where substantial legal questions must be resolved* to determine the rights of the respective parties.

*T.W. Phillips,* 89 Pa.Commonwealth Ct. at 384, 492 A.2d at 780 (emphasis added, citations omitted). Thus, our inquiry, where the lower court has granted a *preliminary* injunction, is

only to decide whether there is a "substantial legal question" to be decided by the trial court. Indeed, in this case we are without benefit of the trial judge's reasoning because the trial court followed the proper procedure by *not* deciding the ultimate questions involved, pursuant to *T.W. Phillips*, 89 Pa.Commonwealth Ct. at 385, 492 A.2d at 781:

According to the Supreme Court's formulation of the "clear right" requirement in Fischer, if the other elements of a preliminary injunction are present, and the underlying claim raises important legal questions, the plaintiff's right to relief is clear. Therefore, the "clear right to relief" element does not require the chancellor to determine the merits of the controversy at the preliminary injunction stage; rather, the chancellor need only determine, in addition of the other criteria, that the claim raises substantial legal questions.

The Supreme Court also instructs, in *Lutz Appellate Printers v. Department of Property and Supplies*, 472 Pa. 28, 33, 370 A.2d 1210, 1212 (1977) that

[i]t has long been the rule in this Court that on an appeal from a decree, whether granting or denying a preliminary injunction, we will not inquire into the merits of the controversy but will instead examine the record only to determine, if there are any reasonable grounds for the action of the Court below. (citations omitted).

Evidently mindful of these instructions from the Supreme Court and this Court, the trial court did not decide the issue which the majority now decides.[1] The trial court recognized that

[a]mong the issues which the court must consider at the time of the final hearing are the following:

1. Whether the developer's appeal of the 1987 denial of its subdivision plan by the Township and the pendency of that appeal as well as a companion mandamus action before the Court of Common Pleas subject the developer to the provisions and land development ordinance regulating trees?

---

1. It also did not decide the other objections raised by Gywnedd Properties.

2. Whether the developer's appeal of the 1987 denial of the subdivision as well as the 1991 filing of an amended subdivision plan which was almost identical to the 1987 subdivision plan and a sketch plan, and other evidence of imminent development subject to the developer to the subdivision and land development ordinance regulating trees?

3. Whether the entire course of conduct of the developer constitutes an illegal attempt to circumvent municipal ordinances regulating trees on wooded lots?

*Lower Gwynedd Township v. Gwynedd Properties, Inc.*, slip op. at 6–7.

This Court, without a full hearing on the evidence, now concludes that there is not a "substantial issue" or a reasonable ground for the injunction, and that the landowner is free, despite his intentions (characterized by the majority as reprehensible) to continue his irretrievable destruction, which may not be preliminarily enjoined.

It may well be that, after a comprehensive hearing on the permanent injunction,[2] there is not sufficient evidence to establish that the developer is engaged in any course of conduct designed to circumvent the municipal ordinances here involved, and, further, that the majority will be proven correct in holding the landowner can engage in the destruction of this entire woodland area. However, when this landowner admits, as he does in his brief, that he has appealed the Board's denial of a subdivision plan,[3] which, if successful will assumably result in development, and where the developer also admits that one of his purposes in destroying trees is to discourage condemnation so that he can develop the land, the least that can be said is that the trial court had reasonable ground to

---

2. The trial court noted that when it ordered the preliminary injunction, the pleadings were not closed and discovery had not occurred.

3. In his brief at pages 5 and 6, the appellant states:

On August 18, 1987, the Board of Supervisors adopted Resolution 87–26 "disapproving" the Subdivision Plan. A timely appeal was filed from that Plan denial in the Court of Common Pleas of Montgomery County at No. 87–13457, on September 15, 1987. A Petition to Reinstate that appeal is presently pending in the Court of Common Pleas.

believe that there existed a substantial legal question on the applicability of municipal and subdivision ordinances. In the interim, it is eminently reasonable to protect the trees from extinction pending the hearing on the permanent injunction.

The consequences of this decision are extensive and dangerous. Under the authority of this decision, any landowner who wishes to develop an area may, before filing his subdivision plan, destroy all trees and then file a plan, thus circumventing any planning ordinance relating to trees. A developer may, even if he has filed a plan, withdraw it, destroy trees and resubmit a subdivision plan. If such action can be taken with trees, it can be taken with any environmental, topographical or aesthetic feature that is regulated in a subdivision ordinance, and there is virtually no way a municipality can prevent a landowner from ruining his property should he find it desirable or expedient to frustrate municipal purposes.

I would uphold the preliminary injunction and order the trial court to hold an immediate hearing on the permanent injunction.