Emerita GUESON, M.D., Arthur N. Barnaby, M.D., William D. Smith, M.D., Gregory J. Lynch, D.O., Ted S. Eisenberg, D.O., Arthur J. Martella, M.D., Dominick M. Giuffrida, D.O., Robert Driscoll, D.O., George Isajiw, M.D., Eric J. Carlson, M.D., Charles H. Schaefer, M.D., V.S. Shamkar, M.D., Francis C. Collins, D.O., James L. Mollick, M.D., F.A.C.O.G., John Salahub, D.P.M., Robert W. Driscoll, D.O., Alphonse Di Giovanni, III, D.O., John J. Fitzgerald, III, D.O., Herbert Stein, M.D., E. Michael Okin, M.D., Michael L. Schorr, D.O., Ellen A. Mahony, M.D., Carl F. Simons, M.D., Louis A. Meier, M.D., Bruce Ganey, D.P.M., Arthur Olson, M.D., John La Manna, M.D., Herbert G. Wendelken, D.O., John D. Jaffe, M.D., Rebecca Choitz, C.P.M., Ronald A. Leonard, M.D., Ernest M. Gordon, M.D., Gary D.A. Lewis, D.O., Walter J. Adanieky, Jr., D.O., Marc B. Osias, M.D., Dennis Braun, M.D., Desmond J. Reilly, M.D., Andrew J. Szebenyi, M.D., Gilma Ramirez, M.D., Roy Stoller, M.D., Joel Lobed, M.D., Joseph M. McGuckin, M.D., F.A.C.S., Rashida K. Kanchwala, M.D.P.C., Marcel A. Thonet, M.D., Carl F. Schultheis, Jr., M.D., Nicholas R. Pagliei, D.O., Natu R. Patel, M.D., Jack Spivack, M.D., Bruce A. Lief, M.D., Pierre Ghayad, M.D., Michael D. Stulpin, M.D., John D. Jaffe, M.D., Thomas C. Peff, M.D., Maureen Brennan–Weaver, D.P.M., Joseph Rabson, M.D., Jay R. Weiskopf, M.D., Joseph Dimino, M.D., James McCord, M.D., Donald Armento, M.D., Alberto Larrieu, M.D., James Banmiller, M.D., Emerly Karandy, D.O., Robert Greenhalgh, M.D., Steven M. Allon, M.D., Francis Carlson, M.D., Francis G. Kutney, M.D., John J. Zaro, M.D., Gary W. Muller, M.D., Reuben I. Ash, M.D., Paul H. Noble, M.D., Carl W. Sharer, D.O., Petitioners,

v.

John REED, Thomas Callahan, Joseph Pulcini (in their official capacities while acting as Directors of the Medical Professional Liability Fund of the Commonwealth of Pennsylvania 1987–95), Dianne Merlino (in her official capacity while acting as Deputy Director of the Medical Professional Liability Fund of Pennsylvania during 1988–92), Linda Kaiser (in her official capacity while acting as the Commissioner of Pennsylvania Department of Insurance), Yvette Kane, in her official capacity as Secretary of State for the Commonwealth of

*Zoning Board of Adjustment,* 415 Pa. 31, 202 A.2d   61 (1964).

Pennsylvania, Cynthia Warner, Administrator of the Commonwealth of Pennsylvania's State Board of Medicine, Nathaniel Alston, P.A., Charles J. Bannon, M.D., Kathleen Galop, Esq., Oliver Morris Johnson, Esq., Daniel B. Kimball, Jr., M.D., Solomon C. Luo, M.D., Sant Ram, M.D., Richard E. Wright, M.D., who are members of the Commonwealth of Pennsylvania State Board of Medicine, Jack D. Albert, Daniel D. Dowd, Jr., D.O., Silvia M. Ferretti, D.O., Morris Fishman, D.O., Kathleen Galop, Esq., Dennis M. Guest, D.O., William R. Henwood, D.O., John L. Johnston, D.O., George M. Kern, Quentin C. Weaver, who are members of the Commonwealth of Pennsylvania State Board of Osteopathic Medicine, Dorothy Childress, in her official capacity as Administrator of the Commonwealth of Pennsylvania State Board of Podiatry, Stanley Bock, D.P.M., Judy Carrhart, M.D., Michael Cibik, Esq., Barbara Davis–Kenyon, D.P.M., Jack Rubinlicht, D.P.M., Maria Wynder, D.P.M., who are members of the Commonwealth of Pennsylvania State Board of Podiatry, Respondents.

Commonwealth Court of Pennsylvania.

Heard June 27, 1996.

Decided July 11, 1996.

Publication Ordered July 19, 1996.

Daniel H. Gray and Harry D. Lewis, for Petitioners.

William H. Lamb, Guy A. Donatelli and James C. Sargent, Jr., for Respondents.

KELTON, Senior Judge.

This case involves the levy of 1996 annual surcharges and 1995 emergency surcharges by the Medical Professional Liability Catastrophe Loss Fund (CAT Fund) against certain health care providers pursuant to the Health Care Services Malpractice Act.[1] On June 27, 1996 I held a hearing on Petitioners' Second application for Special Injunctive Relief. I denied that Second Application at the June 27, 1996 hearing and, by this opinion, set forth my reasons in greater detail.[2]

---

1. Act of October 15, 1975, P.L. 390, *as amended,* 40 P.S. §§ 1301.101–1301.1006.

2. Following our denial of Petitioners' Second Application, they filed with this Court's Protho-

## BACKGROUND

Petitioners are health care providers licensed by the State Boards of Medicine, Osteopathic Medicine or Podiatry. They have requested preliminary injunctions against the CAT Fund officials and the three licensing boards to restrain the boards inter alia from taking any steps to suspend petitioners' licenses because of non-payment of 1995 or 1996 surcharges for medical malpractice insurance in excess of their basic coverage insurance under 40 Pa.S. § 1301.701.

On December 21, 1995, I denied Petitioners' December 4, 1995 application for preliminary injunction ("First Application"),[3] inter alia because Petitioners had failed to add as parties some of the government officials and/or boards essential to their requested relief. Petitioners have subsequently added Secretary of State Yvette Kane, Administrator of the State Board of Medicine Cynthia Warner, members of the State Board of Medicine, members of the State Board of Osteopathic Medicine, Administrator of the State Board of Podiatry Dorothy Childress and members of the State Board of Podiatry. Further, because of the similar nature of the relief requested in the first and second applications, the parties have agreed that the record from the December 21, 1995 hearing should be incorporated into the June 27, 1996 record.

On May 8, 1996, Petitioners filed a "Third Amended Complaint in the Form of Third Amended Petition for Review Seeking Injunctive, Declaratory, and Other Relief." Therein, they request the following relief:

notary on July 9, 1996, a Praecipe to Discontinue all proceedings under the above docket number.

3. With regard to that First Application and the "immediate and irreparable harm" criterion, I found that Petitioners presented no evidence that anybody's license had been suspended, that anybody's license was being threatened, that there were any suspension proceedings before any of the boards or that any of the boards were parties to the proceedings. Concerning whether greater injury would result by granting the requested relief, I found that any injury to the 551 claimants with favorable final judgments or settlements in medical malpractice actions who have been awaiting payment of their claims had to be weighed more heavily than any potential injury

*Count I: Participation in the CAT Fund is Voluntary, Not Mandatory:*

WHEREFORE Petitioners pray that this Court declare that the [Health Care Services Malpractice] Act does not require participation in the CAT Fund, but makes such participation voluntary, that persons who do not participate in the CAT Fund are not entitled to insurance coverage by the CAT Fund, and that failure to pay CAT Fund surcharges is not a violation of the Act, and enjoin further disciplinary proceedings against them.... (Third Amended Complaint at p.37.)

....

*Count II: Breach of Fiduciary and Statutory Duties/Abuse of Agency Discretion/Negligence/Request for Injunctive, Declaratory, and Mandamus Relief:*

WHEREFORE, Petitioners pray that the Court enter an Order declaring the respective rights, responsibilities, and legal and fiduciary duties of the parties; enjoining future violations of the applicable statutes; issuing a writ of mandamus mandating promulgation of essential rules and regulations pursuant to statutory authority; issuing a writ of mandamus directing Respondents Reed and Kaiser to perform their fiduciary duties in recovering CAT Fund trust monies wrongfully diverted or misappropriated, and to perform their fiduciary duties in correcting Pulcini's abusive change in the CAT Fund's Section 605 policy; determining sums misspent by one or more of the Respondents and/or monies wrongfully misappropriated or diverted from the CAT Fund, compelling those Respondents responsible for such diversions

to health care providers having difficulty paying their CAT Fund surcharges.

With regard to the status quo criterion, I noted that many health care providers had already paid their emergency surcharges. I accepted CAT Fund Director Reed's testimony that 104 million dollars out of 107 million dollars' worth of the emergency surcharge had already been submitted.

Finally, I found that Petitioners failed to prove a clear right to relief in that they failed to request specific relief. To the extent that they did in the form of requesting that I enjoin disbursement to claimants or enjoin further billing of health care providers, I concluded that there was no clear right to that relief.

to account for and to refund those sums plus interest to the CAT Fund, and for an award of reasonable attorneys' fees, their costs of maintaining this action.... (Third Amended Complaint at p.42.)

. . . .

*Count III: Violations of Due Process Under Administrative Agency Law and Pennsylvania Constitution:*

WHEREFORE Petitioners pray that this Court declare the CAT Fund component of Act 111 [Insurance Act] void as violative of due process under the Pennsylvania Constitution, and the actions of the CAT Fund and the Respondent State Licensing Boards "not valid", and enjoin further disciplinary actions against the Petitioners. (Third Amended Complaint at p.43.)

. . . .

*Count IV: Section 1983 Claims Against Respondents in Their Official Capacities:*

WHEREFORE, Petitioners request that this Court enter an Order ... invalidating any certifications for suspension of any health care providers to the State Licensing Boards for alleged failure to pay CAT Fund surcharges as violative of constitutional due process, and enjoin Respondent CAT Fund Director and Insurance Commissioner's certifications of Petitioners and other health care providers to the State Licensing Boards for failure to pay the 1995 emergency surcharges, and the 1996 annual surcharge, declaring the Act unconstitutional on its face and as applied, and enjoining enforcement of the Act as against Petitioners, for a reasonable attorney's fee and costs pursuant to 42 U.S.C. section 1988.... (Third Amended Petition at ps.2–3.)

. . . .

WHEREFORE, Petitioners pray that the Court enter an Order under 42 U.S.C. section 1983 compensating Petitioners for any pecuniary loss suffered by them due to Respondents Reed and Kaiser's deprivation of their property interest in their current basic coverage insurance contracts without due process, declaring the rights and liabilities of the parties, and for an injunction prohibiting such deprivation of contract without due process in the future. (Third Amended Petition at p.56.)

## DISCUSSION

In their April 8, 1996 Second Application, Petitioners requested that we enter the following order:

1. Preliminarily enjoin Director of the CAT Fund and the Insurance Commissioner from certifying those Petitioners not yet certified for alleged failure to comply with the Health Care Services Malpractice Act to the respective State Boards for suspension or revocation of their licenses to practice medicine, osteopathy or podiatry; and

2. Preliminarily enjoin the respective State Boards and the Department of State's Bureau of Professional and Occupational Affairs from taking any steps to suspend, revoke or otherwise impair Petitioners' licenses until such time as we make a final determination on the merits.

Respondents filed an answer to the Second Application, therein stating that Petitioners were not entitled to their requested relief because they failed to allege immediate and irreparable harm and their relief, if granted, would doom the entire system of malpractice victim compensation. Respondents also alleged that Petitioners' request was premature because they have the opportunity to pursue their administrative remedies prior to any imposition of an injunction preventing the very hearings to which they allege they are entitled. Further, Respondents averred that granting the requested relief would fail to promote the goals of the CAT Fund [4] and would result in a windfall to Petitioners and an unwarranted risk to victims of malpractice. Finally, Respondents stated that recovery, if warranted, would be adequate because

4. A primary purpose in establishing the CAT Fund was to assure the availability of reasonably priced professional liability insurance for all Pennsylvania health care providers and to insure that persons injured as a result of medical malpractice may obtain prompt adjudication of their claims and receive reasonable compensation for those claims. 40 P.S. § 1301.102.

any damages would be economic in nature only.

■ In determining whether to grant or to deny a request for a preliminary injunction, we must consider the following standards:

1) whether the injunction is necessary to prevent immediate and irreparable harm not compensable by damages;

2) whether greater injury will result by refusing such relief;

3) whether the injunction will restore the parties to the status quo; and

4) whether the plaintiff has a clear right to relief.

*Norwood A. McDaniel Agency v. Foster*, 117 Pa.Cmwlth. 227, 543 A.2d 155 (1988).

### 1) Immediate and Irreparable Harm

One of the grounds upon which I denied Petitioners' First Application was the lack of evidence that anybody's health care provider license had been suspended or that there was even an imminent threat of suspension. Thus, on June 27th, Petitioners presented me with evidence that, since the December 1995 hearing, rules to show cause had been issued and the respective boards had scheduled hearings. *See, e.g.,* Exhibits P–1 and R–1.

At the June 27th hearing, I acknowledged that some of the Petitioners who testified could suffer immediate harm, probably irreparable in nature, if I did not grant the request for a preliminary injunction.[5] Thus, I stated that I was not denying the request on the basis of the "immediate and irreparable harm" criterion. Clearly, a health care provider's loss of a license to practice his or her respective profession in the Commonwealth, for even a day, is a very serious deprivation.

Notwithstanding that first criterion, however, I concluded that Petitioners failed to

*Meier v. Maleski*, 167 Pa.Cmwlth. 458, 648 A.2d 595, 598 n. 3 (1994).

5. I noted as well that at least some of the Petitioners had testified that they were refusing to pay CAT Fund surcharges as a matter of principle and not merely because they had insufficient funds. *See Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828 (3d Cir.1995) (holding that, if the harm complained of is self-inflicted, it does not qualify as irreparable for purposes

satisfy the remaining elements necessary for the issuance of a preliminary injunction. Thus, even though I acknowledged that significant harm could result from my failure to grant the preliminary injunction, I could not award the requested equitable relief on the basis of that one criterion only. *See Leonard v. Thornburgh*, 75 Pa.Cmwlth. 553, 463 A.2d 77 (1983) (holding that the criteria necessary for granting a preliminary injunction are cumulative; if one element is not satisfied, the requested relief may not be granted).

### 2) Greater Injury if Relief Not Granted

Petitioners argued that greater injury would result if we did not grant their requested relief because, if the administrative hearings result in license suspension or revocation, their livelihoods would be destroyed, they would lose patients, suffer damage to their reputations and other non-economic damages. Additionally, counsel for Petitioner presented as a witness one of Dr. Gueson's patients, Rosemary Hophner, who testified that she would suffer if she could not have Dr. Gueson as her doctor.

■ When relevant, courts must consider the possibility of harm to other interested parties and the public interest in determining whether to grant requests for preliminary injunctions. *American College of Obstetricians and Gynecologists, Pennsylvania Section v. Thornburgh*, 613 F.Supp. 656 (E.D.Pa. 1985). In denying Petitioners' First Application, I concluded that "[a]ny injury to the 551 claimants with favorable final judgments or settlements in medical malpractice actions who have been awaiting payment of their claims must be weighed more heavily than any potential injury to health care providers who, for some reason or another, may have problems paying their premiums for medical malpractice." (January 25, 1996 Memorandum Opinion at p.8.)

of determining whether the criteria for the grant of a preliminary injunction have been met.) As I concluded that Petitioners failed to satisfy the other three criteria necessary for the issuance of a preliminary injunction, however, we need not address Petitioners' diverse circumstances and how they relate to whether some would be harmed only as a result of their belief in the illegality of the CAT Fund surcharges.

With regard to the Second Application, I again balanced the interests of other concerned parties and the public with those of Petitioners. I readily acknowledged that, although only Ms. Hophner testified, other patients of Petitioners potentially could suffer some harm as a result of their health care providers losing their licenses for any period of time. I concluded, however, that greater injury would occur here by granting the requested relief than by denying it.

Petitioners' situations are simply too varied to make any blanket generalizations or to fashion any uniform relief. Although all of the Petitioners who testified stated that potential license suspensions or revocations could only have negative consequences, I was compelled to take into consideration as well the interests of persons injured by medical malpractice and the need for continuing availability of reasonable compensation for their claims when the CAT Fund is triggered. Thus, in balancing the equities, I concluded that, at least at this preliminary stage, the interests of potential victims had to be given more weight than those of Petitioners.

### 3) Injunction Necessary to Restore Parties to Status Quo

An injunction may only be granted where it would properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. *Gwynedd Properties, Inc. v. Lower Gwynedd Township,* 150 Pa.Cmwlth. 124, 615 A.2d 836 (1992). In their Second Application, Petitioners argued that an order enjoining further certifications by the CAT Fund Director to the respective boards and enjoining future suspensions or revocations would preserve the status quo pending our resolution of this case on the merits.

**6.** *T.W. Phillips Gas and Oil Company v. Peoples Natural Gas Company,* 89 Pa.Cmwlth. 377, 492 A.2d 776 (1985).

**7.** At the June 27, 1996 hearing, I cited our Supreme Court's pre-enforcement case of *Arsenal Coal Co. v. Department of Environmental Resources,* 505 Pa. 198, 477 A.2d 1333 (1984). In that case, the Supreme Court held that this Court erred in refusing to exercise our equitable jurisdiction where the available means under the Administrative Code that appellant coal mine operators and producers had to challenge regulations promulgated by the Environmental Quality

As I noted when denying the First Application, "the status quo is that health care providers have already paid 104 million out of 107 million dollars' worth of the emergency surcharge." (January 25, 1996 Memorandum Opinion at p.8.) The record of the first proceeding, incorporated into this record, included CAT Fund Director Reed's testimony on this point. Thus, for the same reason, it similarly would have been an impossibility for the preliminary injunction requested in the Second Application to return the parties to the so-called status quo.

In addition, it is simply impossible here to turn back the clock; malpractice judgments have been rendered and must be paid. Finally, I am compelled to note that the diverse Petitioners do not all have the same status. Again, because there is no single "quo," their situations are too varied to make generalizations or to design uniform relief.

### 4). Clear Right to Relief

Although petitioners at the preliminary injunction stage need not establish an absolute right to relief on their underlying claim,[6] I determined that Petitioners here failed to establish a clear right to their requested relief. I refused to presume prematurely that the administrative remedies already in motion were inadequate.[7] I noted as well that the need for individual hearings such as those that will be provided by the respective licensing boards became increasingly more apparent as subsequent Petitioners testified. Through their testimony, they illustrated the fact that although they were all health care providers, they were not all alike in their CAT fund problems; instead, they were individuals as varied as Drs. Gueson, Lynch and Larriau.

Board would have been inadequate. In other words, there was no exhaustion of remedies required where there was ongoing uncertainty that involved the day-to-day business operations of a whole industry of statewide concern.

I determined that *Arsenal Coal* was distinguishable from the case before us because, here, there are adequate administrative remedies available. Thus, I declined to exercise equitable jurisdiction in the absence of evidence that the administrative remedies already in motion were inadequate.

At the December 1995 hearing for the First Application, obstetrician and gynecologist Emerita Gueson, M.D. credibly testified that she had financial difficulties in meeting her CAT Fund payments. She may also disagree with CAT Fund surcharges as a matter of principle, but it was clear to this fact finder that, given some of the financially needy patients she treats and the geographic area in which she practices, she has problems in satisfying her financial obligations.

On the other hand, Dr. Lynch, a general and vascular surgeon in northeast Philadelphia, testified that he refused to pay the surcharge because it was an attack on the private practice of medicine. Dr. Larriau, a cardio-thoracic surgeon, testified that, part of the reason that he did not pay his CAT Fund surcharge was because of the inequities in its application.[8]

The General Assembly has provided that the administrative agencies involved here are to conduct individual hearings in order to determine whether there has been a violation of the Health Care Services Malpractice Act. Given Petitioners' varied situations, it is only proper that each be given the chance, at his or her own hearing before the respective board, to present any peculiar arguments and/or defenses to the allegation that there has been a violation of the Health Care Services Malpractice Act.[9]

I simply decline to act as a super-licensing board and delve into matters better left to the expertise of the respective hearing examiners and boards. Further, I decline to decide at this preliminary stage that any administrative hearing before the respective boards will necessarily be a "sham" hearing.[10] Each Petitioner will have his or her own right to a due process administrative hearing. An individual petitioner who is not happy with the result will be free to exhaust his or her administrative remedies in an orderly fashion pursuant to applicable law. There are procedural remedies available to protect them against substantive deprivations.

## CONCLUSION

Accordingly, I found that Petitioners failed to satisfy the criteria necessary for the grant of a preliminary injunction and denied their Second Application for Special Relief.

IF YOU WISH TO DEFEND AGAINST THE ALLEGATIONS IN THIS ORDER TO SHOW CAUSE, OR TO PRESENT EVIDENCE ON YOUR BEHALF IN MITIGATION OF ANY PENALTIES WHICH MAY BE IMPOSED UPON YOU OR YOUR LICENSE..... (Item 20, Second Application.)

. . . .

At the hearing, evidence will be received concerning the allegations set forth in the Order to Show Cause and/or any evidence in mitigation. (Item 41, Third Amended Complaint.)

8. I note here that Dr. Larriau testified that not all of his financial problems were due to large CAT Fund surcharges, but also were the result of the expansions of certain large medical centers in his "territory." Also, I note that several of the health care providers testified that, in addition to large CAT Fund surcharges, many of their financial difficulties also were due to health maintenance organization policies. Thus, some of the hardships testified to by Petitioners, though genuine in nature, did not even relate to the CAT Fund.

9. In *Slawek v. State Board of Medical Educ. and Licensure*, 526 Pa. 316, 323, 586 A.2d 362, 366 (1991), our Supreme Court reviewed the Board's decision after hearing to determine on appeal whether the Board's consideration of mitigating factors was not capricious or an abuse of discretion. In addition to the fact that *Slawek* refers to the introduction of mitigating factors in suspension cases, the notice attached to the order to show cause and the notice of hearing sent out by the prothonotary of the Bureau of Professional and Occupational Affairs also indicate that evidence in mitigation of the charges will be received at the hearings:

10. At the June 27th hearing, I stated that I was declining to decide the meaning of the word "shall" in Section 701(f) of the Health Care Services Malpractice Act:

(f) The failure of any health care provider to comply with any of the provisions of this section or any of the rules and regulations issued by the director shall result in the suspension or revocation of the health care provider's license by the licensure board.

40 P.S. § 1301.701(f). At this juncture, any interpretation of this section must be left to the respective licensing boards.