**FW TRIANGLE LP, James Brandenburger and James Sheridan, Appellants,**

v.

**ZONING HEARING BOARD OF UPPER DUBLIN TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 2002.
Decided March 12, 2003.
Reargument Denied May 7, 2003.

John Dooley, Lansdale, for appellants.

Gilbert P. High, Jr., Norristown, for appellees.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

F.W. Triangle, L.P., James Bradenberger and James Sheridan (collectively Appellants) appeal from the order of the Court of Common Pleas of Montgomery County (trial court) denying them a demolition permit to raze a residence, known as the Clime House, that was built in 1797.

In doing so, the trial court affirmed the decision of the Upper Dublin Township Zoning Hearing Board (Board) and the Township Zoning Officer to refuse to issue a demolition permit. We affirm.

F.W. Triangle is the owner of property (Property) located at 1668 Susquehanna Road in Upper Darby Township, on which a barn and a residence, each over 100 years in age, are located. The house is a stone structure of historical significance; indeed, one of its distinguishing features is a 1797 date stone. The Property is located in an A–Residential Zoning District and is also subject to the provisions of the Dresher Overlay District that requires conditional use permits for certain specified non-residential uses.

On August 16, 2000, Appellants requested a preliminary opinion from the Township on their proposed non-residential development of the Property. Their request was considered by the Township Zoning Officer and Building Officer, Richard D. Barton (Zoning Officer), pursuant to Section 916.2 of the Pennsylvania Municipalities Planning Code, 53 P.S. § 10916.2.[1] Ap-

---

1. Section 916.2 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, added by Section 99 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10916.2, provides,

In order not to unreasonably delay the time when a landowner may secure assurance that the ordinance or map under which he proposed to build is free from challenge, and recognizing that the procedure for preliminary approval of his development may be too cumbersome or may be unavailable, the landowner may advance the date from which time for any challenge to the ordinance or map will run under section 914.1 by the following procedure:

(1) The landowner may submit plans and other materials describing his proposed use or development to the zoning officer for a preliminary opinion as to their compliance with the applicable ordinances and maps. Such plans and other materials shall not be required to meet the standards prescribed

for preliminary, tentative or final approval or for the issuance of a building permit so long as they provide reasonable notice of the proposed use or development and a sufficient basis for a preliminary opinion as to its compliance.

(2) If the zoning officer's preliminary opinion is that the use or development complies with the ordinance or map, notice thereof shall be published once each week for two successive weeks in a newspaper of general circulation in the municipality. Such notice shall include a general description of the proposed use or development and its location, by some readily identifiable directive, and the place and times where the plans and other materials may be examined by the public. The favorable preliminary approval under section 914.1 and the time therein specified for commencing a proceeding with the board shall run from the time when the second notice thereof has been published.

pellants submitted a site plan, described as a concept plan, showing a proposal for two restaurants, two office buildings and a day care center. At Appellants' request, the concept plan was advertised in the *Ambler Gazette* as complying with the use regulations of the Zoning Ordinance and the provisions of the Dresher Overlay District.

Several months later, Appellants applied for a permit to demolish both the house and the barn located on the Property. After receiving the application for a demolition permit, the Zoning Officer contacted one of the Appellants, Brandenberger, by telephone. Bradenberger reiterated that the development of the Property would be consistent with the concept plan.

On February 8, 2001, the Township issued the demolition permit for the barn [2] but not the house. It denied the permit to demolish the house because the application failed to comply with Section 255–219.B of the Zoning Ordinance, which requires that any building constructed prior to 1900 be retained and incorporated into the proposed development in a way that maintains the general appearance of the building.[3] The Zoning Officer reasoned that, "I would need more convincing reasons for not retaining the house, given the goals of the zoning district." Reproduced Record, 8 (R.R. ___).

Appellants appealed the denial of the demolition permit to the Board, which de-

nied their appeal. In doing so, the Board determined that,

> The activity undertaken by the applicants including correspondence with the Zoning Officer, filing and advertisement of a Concept Plan, telephone conversations with the Zoning Officer concerning proposed uses and application for a demolition permit *are sufficient to render the appealing parties "applicants" under Section 255–219.B. giving them the responsibility of demonstrating compliance with the conditional use standards* set forth in Section 255–219.B. Since the applicants have not demonstrated that the building in question at 1668 Susquehanna Road is not compatible with their proposed uses, the action of the Zoning Officer was proper and the appeal therefrom is denied.

Board Opinion, 8, R.R. 135 (emphasis added).

Appellants then appealed the decision of the Board to the trial court, which affirmed the Board. The trial court reasoned that,

> In the instant matter, credible evidence shows that while Appellants were seeking the demolition permit for the home, they also intended to proceed with the development of the property in accordance with the concept plan that had been previously submitted to the Zoning Officer. Accordingly, *the Zoning Officer denied the demolition permit for the*

---

2. Barton received information that the barn on the premises was termite-infested and contaminated from a chemical spill that had occurred inside the barn.

3. Section 255–219.B. of the Zoning Ordinance provides in relevant part,

   B. Conditional use standards. All conditional use applications shall be filed and processed in compliance with Article XXV. In addition, applicants shall demonstrate compliance with the following:

(1) Retention and use of existing principal buildings constructed prior to 1900:
(a) The proposed use shall retain and use the existing principal building(s) on the lot when compatible with the use proposed and shall retain the general appearance, character and types of building materials of the front and side faades of the existing building, existing front and side porches and window openings.
TOWNSHIP OF UPPER DUBLIN, PA., ZONING, ch. 255, art. XXIX, § 255–219.B (2000).

*house on the basis that Appellants should instead proceed by filing a conditional use application to show why the retention of the house is not compatible with their development plan.* The Zoning Officer acted properly in not allowing the demolition of this historical home. The evidence established that Appellants' development plan for the property would have required their compliance with 255–219.

\* \* \*

■ *To permit a developer to simply destroy an historical structure, which is the* [sic] *properly regulated under a Municipal Zoning Ordinance, on the eve of development, would render all such Municipal Ordinances meaningless.*

Trial Court Opinion, 5–6, R.R. 152–153 (emphasis added). Appellants then appealed to this Court.[4]

On appeal, Appellants contend that the trial court erred. They assert that the application for a demolition permit was submitted to the Township pursuant to the Building Code and not pursuant to the Zoning Ordinance. Accordingly, the permit should have been considered without regard to the development plans that had been filed as a "concept plan,"[5] approved and published in the *Amber Gazette* as complying with the Zoning Ordinance under the provisions of the Dresher Overlay District.

A demolition permit is a form of a building permit controlled by the provisions set forth in the Building Code.[6] Section 112.1 of the Building Code provides that the enforcement official shall reject an application if it does not conform to *all pertinent laws and ordinances*.[7] The Zoning Ordinance is such a "pertinent law," and it could be considered by the Township when reviewing Appellant's application for a demolition permit. However, Appellants contend that the application for the demolition permit was a proposal to create a vacant lot, which did not require a conditional use approval in the Dresher Overlay District. Appellants rely on *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 150 Pa.Cmwlth. 124, 615 A.2d 836 (1992), to support their contention.

At issue in *Gwynedd* was a 27–acre track of dense forest and woodland, known

4. In zoning cases where the trial court does not receive additional evidence, our scope of review is whether the Board committed an abuse of discretion, an error of law or made findings of fact not supported by substantial evidence. *White Advertising Metro, Inc. v. Zoning Hearing Board of Susquehanna Township*, 70 Pa.Cmwlth. 308, 453 A.2d 29 (1982).

5. The parties agree that Appellants did not file a formal application for a conditional use permit. Board's Brief, 9 & Appellants' Brief, 2–3.

6. Specifically, Section 111.1 of the Building Code, adopting the BOCA National Building Code, provides:

111.1 When permit is required: It shall be unlawful to construct, enlarge, alter or demolish a structure ... without first filing an application with the code official in writing and obtaining the required permit therefore ....

UPPER DUBLIN TOWNSHIP, PA., § 111.1 (1993).

7. Section 112.1 of the Building Code adopting the BOCA National Building Code provides,

112.1 Action on application: The code official shall examine or cause to be examined *all applications for permits* and amendments thereto within a reasonable time after filing. If the application or the plans do not conform to the requirements *of all pertinent laws*, the code official shall reject such application in writing, stating the reasons therefor. If the code official is satisfied that the proposed work conforms *to the requirements of this code and all laws and ordinances applicable thereto, the code official shall issue a permit therefor as soon as practicable.*

UPPER DUBLIN TOWNSHIP, PA., § 112.1 (1993) (emphasis added).

as Penllyn Woods. In 1987, the landowner submitted a proposed subdivision plan, which was denied by the Township Board of Supervisors. Thereafter, the Township condemned [8] Penllyn Woods for park purposes, and the landowner began to destroy Penllyn Woods by cutting down acres of trees. The landowner admitted that the trees were being intentionally destroyed in order to discourage the Township's interest in acquisition of the property by condemnation. The Township filed suit to enjoin further destruction of the trees, and the trial court issued a temporary restraining order and, then, a preliminary injunction. The landowner moved to dissolve the preliminary injunction, which the trial court denied. The landowner appealed to this Court.

On appeal, the landowner in *Gwynedd* argued that the preliminary injunction should not have been granted because the landowner was not violating the Township's Zoning Ordinance regarding the regulation of trees because he did not have a plan for the subdivision of Penllyn Woods pending with the Township. This Court agreed and dissolved the injunction, reasoning that,

> The language of the Sections 1238.15 and 1238.16(h) of the Ordinance clearly contemplate the existence of a subdivision plan or land development plan; this Ordinance, therefore, is limited to protecting trees on land being subdivided or developed according to a plan. *In the absence of a subdivision or land development plan*, we must conclude that Sections 1238.15 and 1238.16(h) do not restrict the landowner's property right to cut trees on his own land.

8. The landowner challenged the Township's condemnation, and the Pennsylvania Supreme Court revested title for Penllyn Woods in the landowner. The landowner then filed another subdivision plan which, again, was

The Township argues that the landowner's destruction of Penllyn Woods constitutes de facto "land development" and, therefore, the Ordinance is applicable. The trial court, however, observed:

*The tree cutting ... did not follow any discernable pattern and was not performed in connection with surveying or preparation of the property for development.* One of the explanations ... for this behavior was to reduce the attractiveness of the site, which would discourage the Township from pursuing further eminent domain proceedings.

(Emphasis added.) *Nothing in the record suggests that the landowner was performing "land development" within the scope of the Ordinance.* Instead, the record demonstrates only that the landowner engaged in the random cutting of trees to discourage the Township's interest in the tract for park purposes, *an activity not prohibited by the Ordinance.*

\* \* \*

*Because the Sections of the Ordinance relied upon by the trial court and the Township are inapplicable* and the Township has not asserted any other legal basis for restricting the tree cutting, the landowner's systematic destruction of the trees, regardless of how reprehensible this may be, cannot be enjoined. The landowner has a constitutional right to use his property as he desires, ..., and, since its tree cutting does not violate any laws or regulations, we must hold that the trial court erred in issuing the preliminary injunction.

denied by the Township. Because the condemnation was reversed on a technical basis, the landowner expected the Township to make a second attempt to take Penllyn Woods for a park.

*Id.* at 838–839 (emphasis added). Accordingly, in the absence of a pending development plan, the ordinance was found inapplicable.

■ Here, however, we do not believe the Zoning Ordinance is inapplicable. It is a "pertinent law" incorporated by reference into the Building Code. It addresses redevelopment of existing structures in the Dresher Overlay District, stating in relevant part that it will:

A. Provide the Dresher Triangle area of the township with the ability to incorporate new suitable land uses, for which the area is not currently zoned.

B. Permit new development on vacant land and encourage the *redevelopment of existing structures in such a way as to create a transition in intensity between existing residential and commercial uses.*

C. Encourage development and redevelopment that can be *accommodated by existing structures, lot sizes and other physical attributes of properties in the district while preserving existing historic houses.*

D. Maintain the neighborhood scale of existing development while promoting a village-like atmosphere.

Township of Upper Dublin, PA., Zoning, ch. 255, art. XXIX, § 255–216 (2000) (emphasis added), R.R. 162. The preservation of historic structures is a stated goal, which will be defeated if Appellants are permitted to demolish the Clime House. As Judge Lord's dissent in *Gwynedd* warned,

*The consequences of this decision are extensive and dangerous.* Under the authority of this decision, any landowner who wishes to develop an area may, before filing this subdivision plan, destroy all trees and then file a plan, thus circumventing any planning ordinance relating to trees. A developer may, even if he has filed a plan, withdraw it, destroy trees and resubmit a subdivision plan. *If such action can be taken with trees, it can be taken with any environmental, topographical or aesthetic feature that is regulated in a subdivision ordinance,* and there is virtually no way a municipality can prevent a landowner from ruining his property should he find it desirable or expedient to frustrate municipal purposes.

*Id.* at 841 (emphasis added).

Leaving aside the merits of the holding of the majority in *Gwynedd,* it is inapposite here. In *Gwynedd,* the landowner's development plan had been *denied* on two occasions. Here, Appellants filed a concept plan that was *approved* by the Township, and at the request of Appellants, the development plan was published in a newspaper of general circulation as "complying" with the very ordinance Appellants now claim to be inapplicable. The concept plan was never withdrawn or disavowed; to the contrary, Appellants confirmed their intention to develop the Property, after destruction of the Clime House, in accordance with the concept plan. Appellants' claim on appeal that they intend to turn the Property into vacant land is inconsistent with the record. To claim the concept plan is now a nullity, after requesting that it be published as complying with the Zoning Ordinance, is an unacceptable strategy for avoiding the requirements of the Zoning Ordinance. We heed Judge Lord's warning.

For these reasons, we affirm the trial court.

## ORDER

AND NOW, this 12th day of March, 2003, the order of the Court of Common Pleas of Montgomery County, dated April 10, 2002, in the above-captioned matter, is hereby affirmed.

Dissenting Opinion By Judge McGINLEY.

I respectfully dissent to the majority's conclusion that the Appellants must be restrained from demolishing Clime House for failure to comply with Section 255–219.B. of the Zoning Ordinance.

I also disagree with the majority's conclusion that *Gwynedd* is inapposite. In *Gwynedd,* this Court determined that the landowner, Gwynedd Properties, Inc. (GPI), had filed no land development or subdivision plan that triggered the sections of the Subdivision and Land Development Ordinance that Lower Gwynedd Township sought to apply to prevent GPI from cutting Pennlyn Woods. This Court made this determination even though GPI had twice filed a subdivision plan.

Here, the Zoning Officer denied the Appellants application for a permit to demolish Clime House based on Section 255–219.B. of the Zoning Ordinance. This section only is relevant when a landowner seeks a conditional use permit. The Appellants did not apply for a conditional use permit. Further, as in *Gwynedd,* the Appellants never formally filed a plan and therefore were never required to obtain a conditional use permit. This was a request for a permit to demolish Clime House, no more, and should have been addressed on the merits.

The majority asserts that when the Appellants requested the Zoning Officer's preliminary opinion for a proposed non-residential development of the property that included Clime House and attached a site plan or "concept plan" to the request, Section 255–219.B. came into play and the Appellants were required to comply with Section 255–219.B. I respectfully disagree.

The August 16, 2000, letter from the attorney for Brandenburger/Sheridan Builders, Marc D. Jonas, that sought the Zoning Officer's preliminary opinion clearly stated that "[t]his plan will not bind or commit either the property owner of the township to the plan. Our client must proceed with a land development application as the next step in the land use process." Letter from Marc D. Jonas, August 16, 2000, at 2. I believe there was no application for land development or zoning approval. I would reverse.